670 So.2d 1339 (1996)
Jeanne O'BOYLE
v.
Joseph W. PIGLIA, Metropolitan Property & Casualty Insurance Company, The City of Gretna Police Department, and Titan Indemnity Insurance Company of San Antonio.
No. 95-CA-990.
Court of Appeal of Louisiana, Fifth Circuit.
February 27, 1996.
Ungarino & Eckert, Matthew J. Ungarino, David I. Bordelon, Metairie, for Appellant Metropolitan Property & Cas. Ins. Co.
Clifford E. Cardone, New Orleans, for Appellee Jeanne O'Boyle.
Before DUFRESNE, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Metropolitan Property & Casualty Insurance Company (Metropolitan), appeals from a judgment finding it fifty percent liable for damages sustained by plaintiff, Jeanne O'Boyle, in an automobile accident. We affirm.
On February 15, 1991, at approximately 7:30 or 8:00 p.m., plaintiff was stopped for a traffic signal at the intersection of Willow Drive and the Westbank Expressway in *1340 Gretna, Louisiana. Her vehicle was in the left lane and an ambulance was in the adjacent or middle lane. A van was in the far or right lane. While the traffic signal was still red, a police car with lights flashing pulled behind plaintiff's car and turned on its siren. Plaintiff was unable to move because the cross street traffic was heavy. The officer "barked" his siren again at plaintiff. This time plaintiff drove her car at an angle in front of the ambulance. This allowed sufficient space for the police car to pass, but caused her vehicle to block part of the intersection. As soon as the police car passed, a car approached from the cross street in the lane which plaintiff was blocking. This driver created pressure on plaintiff to move her car. As soon as the traffic cleared, she drove through the intersection. Plaintiff then moved back to the left lane, where she had been previously. Suddenly and without warning she felt an impact when her car was struck in the rear by another police car, driven by Gretna Patrol Officer Joseph Piglia (Piglia). She also heard an explosion as paint cans in her trunk burst on impact. She did not see the officer's lights nor hear his siren.
Piglia was responding to a burglary call when he approached the intersection. He testified that he had his lights and siren on and was following the first police car when he began to cross the intersection. However, before he could pass, a car drove into the intersection on the cross street and stopped suddenly in the middle of the intersection. In order to avoid this car, Piglia swerved around the car, going in front of the ambulance which was stopped in the middle lane of the Westbank Expressway. It was then that he struck plaintiff's vehicle from the rear.
Plaintiff was taken by a friend to the emergency room of a local hospital, after refusing, for insurance reasons, to go in the ambulance. Her head and face were bleeding from striking the steering wheel. Although she was wearing her seatbelt, the impact threw her body forward and back with sufficient force to injure her neck and back. She suffered various bruises, as well. At the hospital, x-rays were taken, she was given pain medication and warnings about head injuries. Plaintiff went home and slept the next day. She then went to her brother, a doctor specializing in internal medicine. By this time, her eyes were black and blue, she was bruised and swollen from the right eyebrow into her hairline, her nose was extremely swollen, she was having difficulty breathing and her upper lip and nose were numb. She stated that she looked like a "pig" because of the swelling. Plaintiff was also suffering from "sick" headaches and was aching all over. Her neck was sore and swollen across the front, she was having difficulty turning her neck from side to side and she could not bend over. Dr. O'Boyle ordered bed rest for one week and gave plaintiff pain medication. He referred her to Dr. Calvin Johnson, a Plastic and Reconstructive Surgeon. Her nose was pushed to one side and crusted with blood. He determined that surgery was required to straighten her nose and noted that it was infected. Plaintiff stated that her nose was extremely sore. Dr. Johnson prescribed antibiotic cream.
Plaintiff, a lawyer, continued to work during this period of time. However, her injuries were extremely embarrassing because she had to go to court and meet with clients looking like she had been "beaten up".
In March, 1991, plaintiff was operated on under general anesthesia. She had an overnight stay in the operating facility. Following the surgery, her face was sore and badly swollen. She had breathing difficulties while her nose remained swollen. Her eyes were black and blue, but there was very little bruising after the surgery. These side effects disappeared after three to four weeks. Presently, her nose is almost straight, but she has some sinus problems because of scar tissue from the surgery. For several months after the surgery, she was told to avoid bending or any type of activity that would cause her nose to bleed.
For fourteen months, plaintiff was treated by Dr. O'Boyle for her problems, including her back and neck discomfort. Following his advice, she eventually saw an orthopedic surgeon because she was having neck muscle spasms, causing her arm to become numb, and was suffering periodically from back muscle spasms, causing her back to "knot *1341 up". When this occurred, if she bent down, she was unable get up by herself. Dr. V.J. Zeringue performed two Magnetic Resonance Imaging (MRI) tests, the first of which indicated that she had a mild bulging disc in her back. The second test showed that the bulge had diminished. Plaintiff was treated by Dr. Zeringue two or three times. He prescribed exercises, a corset and anti-spasmodic medication. She still has problems when she sits and stands for long periods of time.
Plaintiff had been very athletic, playing tennis, doing aerobics and gardening. As a result of the accident, Dr. Zeringue determined that plaintiff was twenty percent disabled from work and thirty percent disabled from normal activities. Plaintiff also was seen by defendant's independent medical examiner, Dr. Gordon Nutik, who did not recommend any further treatment.
As a result of her injuries, on February 12, 1992, plaintiff filed suit against the City of Gretna, Piglia and Metropolitan, plaintiff's underinsured/uninsured motorist (UM) insurance carrier. In March, Metropolitan answered the suit and filed a cross-claim against Piglia and his insurer, Titan Indemnity Insurance Company of San Antonio (Titan) for indemnity of its medical payments. In May of 1995, the parties stipulated that plaintiff waived her claims for past and future lost wages and loss of earning capacity. On May 18, 1995, Metropolitan filed a Motion for Summary Judgment asserting that plaintiff elected lower coverage than the liability amount. The motion was denied in July of 1995. On July 13, 1995, a stipulation was entered into the record asserting that plaintiff compromised and settled the suit with the City of Gretna, Piglia and Titan. In August of 1995, the suit was dismissed as to them. She also stipulated that her damages were less than $20,000. Shortly after, Metropolitan, the remaining defendant, dismissed its' cross claim, without prejudice.
On July 17, 1995, a judge trial was held in which a judgment was rendered in favor of plaintiff and against Metropolitan. In the judgment, the trial judge decreed that plaintiff suffered more than $20,000 in damages, but the judgment is limited to that amount due to the stipulation. The judgment states that Metropolitan did not have a valid selection of lower UM limits and, therefore, the policy limits at the time of the accident were equal to the liability policy limits ($20,000). The judgment further states that Metropolitan, as plaintiff's UM carrier, is liable for fifty percent, or $10,000, of plaintiff's damages for the percentage of fault assessed against the "phantom" driver. Legal interest and costs are assessed against Metropolitan.
On appeal, Metropolitan asserts that the trial judge erred in holding it liable for the damages caused by the "phantom" driver. Metropolitan also contends that the trial judge erred in failing to find plaintiff comparatively negligent.
Metropolitan first argues that it is not liable because plaintiff failed to prove a negligent phantom driver was partially at fault. It cites La.R.S. 22:1406 D, arguing that UM is not applicable where there is no contact with the phantom driver, unless an independent or disinterested witness can testify about the negligence of the phantom driver. Here, Metropolitan contends that the only testimony about the negligence of the phantom driver was from the tortfeasor, Piglia. It argues that the officer is not a independent or disinterested party because, at the time of trial, he was not yet dismissed from the lawsuit. He was still a party defendant. In addition, Metropolitan contends that Piglia testified that he could be suspended if he were found at fault.
Plaintiff contends that Piglia was an independent and disinterested witness because he was not a party when he testified, due to the settlement and compromise. Further, plaintiff notes that the officer received no penalty from the accident, which had occurred four years before the trial and was unlikely to be penalized after four years.
La.R.S. 22:1406 D states:
... The coverage provided under this Subsection shall not provide protection for any of the following:
(l) Damage where there is no actual physical contact between the covered motor vehicle and an uninsured motor vehicle, *1342 unless the injured party can show, by an independent and disinterested witness, that the injury was the result of the actions of the driver of another vehicle whose identity is unknown or who is uninsured or underinsured.
(f) Uninsured motorist coverage shall include coverage for bodily injury arising out of a motor vehicle accident caused by an automobile which has no physical contact with the injured party or with a vehicle which the injured party is occupying at the time of the accident, provided that the injured party bears the burden of proving, by an independent and disinterested witness, that the injury was the result of the actions of the driver of another vehicle whose identity is unknown or who is uninsured or underinsured.
First, Piglia testified at trial that he was no longer a defendant. The compromise and settlement stipulation was entered into the record prior to trial. Thus, although he was not dismissed by court order, he no longer had an interest in the outcome of the litigation. Furthermore, Piglia testified that although he could have been suspended as a result of his fault for the accident, he was not penalized in any manner. It was not likely that he would be penalized because of his testimony four years after the suit. Piglia had nothing to lose or gain by his testimony that a phantom driver pulled into the intersection in front of him, causing him to swerve around the driver and collide with plaintiff. Thus, we find that the trial judge did not err in relying on the testimony of Piglia to find that plaintiff proved by an independent and disinterested witness that the phantom driver was fifty percent at fault in the injury.
Second, Metropolitan asserts that the trial judge erred in failing to find plaintiff comparatively at fault. It contends that plaintiff was negligent in pulling her car into the left lane after crossing the intersection. It asserts that she offered no explanation as to why she failed to see Piglia's flashing lights or hear his siren before moving into the left lane.
Plaintiff testified that she moved into the left lane mid-way down the block from the intersection. She stated that she neither saw nor heard the police vehicle approaching when she merged into the left lane because she was concentrating on getting clear of the intersection and the traffic when she felt the impact.
Apportionment of fault is a question of fact to be decided by the trier of fact. Underwood v. Dunbar, 628 So.2d 211, 214 (La.App.2d Cir.1993); writ denied, 632 So.2d 767. The court of appeal may not set aside the finding of fact in the absence of manifest error or unless the finding is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). After our review of the evidence, we find that plaintiff responded reasonably to an emergency situation. Thus, the trial judge was not clearly wrong in not apportioning fault to plaintiff.
Accordingly, the judgment of the trial court is hereby affirmed.
Costs of this appeal are to be paid by Metropolitan.
AFFIRMED.