IzCANNELLA, Judge.
Defendants, Dr. Edward Beckman (Dr: Beckman) and his insurer, United Services Automobile Association (USAA), appeal from a judgment in. favor of plaintiff, Kenneth McCraney, for damages from injuries he received in a car-bus collision. We affirm.
Plaintiff was a passenger on an eastbound transit bus on his way home from work on January 18, 1995. The bus stopped to pick up passengers at the corner of Jefferson Highway and ■ Coolidge Street in Jefferson Parish, Louisiana. The bus stop was located by a Circle K convenience store. Due to the length of the bus, it partially obstructed the driveway of the store. Defendant was exiting the parking lot of the store when his Mercury Sable struck- the right rear side of *1121 the bus. The bus driver contacted his office and a state trooper was dispatched to the scene. No one received injuries serious enough for emergency medical care, although four people, excluding plaintiff, claimed at the scene to have been injured. Several days later, plaintiff went to Metropolitan Health Clinic for pain to his neck and shoulder. Plaintiff was treated for an impact injury to the right shoulder and cervical trapezius strain for five months.
|sOn August 25, 1995, plaintiff filed suit against defendants for his injuries. A judge trial was held on August 28, 1996 and the mátter was taken under advisement. On November 8, 1996, the trial judge rendered judgment in plaintiff’s favor and awarded him $6,250 for general damages, $616 for medical expenses and $350 per hour for expert witness fees.
On appeal, defendants assert that the trial judge manifestly erred in finding plaintiff was injured because his testimony was not credible.
Plaintiff testified that he was riding on a transit bus on his way home on the day of the accident. He was seated next to a window in the right rear of the bus. He was tired from working that day and had his arm and elbow resting on the window ledge. His head was leaning on his hand. At approximately 5:30 p.m., the bus stopped at its regular stop in front of a convenience store. Several passengers got on the bus. While the bus was stopped, plaintiff glanced out of the window. He noticed that the rear portion of the bus was partially blocking the store driveway. He also saw a car coming out of the parking lot which did not stop and seemed to be accelerating. Then the car ran into the side rear of the bus. People were getting on the bus at the time of the impact. Although the impact was not severe, it caused plaintiff’s arm and elbow to fall from the window ledge. Plaintiff stated that his head hit the window and his shoulder hit the ledge. Plaintiff testified that the impact also knocked a nearby person’s knapsack off the seat. Although the driver spoke to the police officer who arrived later at the scene, no one on the bus talked to the officer. The riders were then put on another bus.
Dr. Beckman, a pathologist, was leaving the parking lot of the convenience store when he observed the bus stop with its rear portion partially blocking the driveway. He testified that he moved to avoid the bus; but another vehicle entered the lot very quickly, causing him to swerve to avoid the other car. He stopped abruptly by braking hard. He testified that he did not realize that he had touched the bus until the bus driver came out and told him.
The driver of the bus, Leonard Ola, Jr. (Ola), testified that the roadway was wet from rain and that it was almost dark. He testified that the impact raised the bus a “little |4bit” or that it “rocked” the bus a little, but then he said that the bump he felt was slight. Ola said that he would not have known that the bus was hit if he had not been looking in the mirror and saw defendant’s car stopped very close to the rear corner of the bus. However, he also noted that the bus weighs approximately nineteen tons.
Ola went out to check the damage and found a scuff mark on the bumper where it had been in contact with defendant’s car. He also noticed a dimple on defendant’s ear bumper in the area of the contact. Subsequently, he asked the passengers three times if anyone was hurt and plaintiff did not come forward. After he asked the third time, three other people said “yes”. He noted that at the time of the contact, someone was getting on the bus, putting money in the money box and that person was not thrown around.
The police officer who investigated the accident noted that the damage was light and that four people indicated injuries.
USAA’s damage appraiser, Gary Breaux (Breaux), inspected Dr. Beckman’s car and said that it was involved in a low impact accident. He noted a small dent in the bumper, left of center. He did not know the impact speed before damage would occur for the particular bumper on the car.
Lawrence Hamm, Jr. (Hamm), a mechanical engineer and expert in accident reconstruction, also testified for defendants. He did not exam the vehicles, but relied on *1122 photographs of the car taken by Breaux, photographs of the bus, a damage estimate for the car, USAA’s notes, a recorded statement of plaintiff and two. others on the bus, the police report and an investigative report. He said that the car could not have much impact on the bus. He stated that the impact speed was no greater than five miles per hour because there was no discernable movement of the .impact absorbers on the car, according to the photographs. He admitted that the estimate for the car’s repair was $52 for two hours repair and realignment of the bumper cover. He also noted that the angle of the car’s photographs is different in two of the photographs. He described the “Delta V”, which is the velocity of the impact on the bus, as being very small. However, this conclusion was based on a rear-end collision.
James Ziegler, an expert in bio-mechanical engineering and bio-medical |5engineering, was asked to give his opinion of whether this accident could have caused any injuries. Relying on Hamm’s analysis, he found it extremely unlikely because the speed involved in the impact was so slow. However, he noted that the information he received from Hamm was based on a rear-end collision. Further, he could not say that plaintiff was not injured when his arm slipped off the window ledge. Notably, his report refers to a back injury.
Plaintiff testified that, at the time, he felt a twinge in his neck. He was not concerned because he thought that it would go away. When he got home, he took some Tylenol and soaked his elbow and shoulder. The discomfort did not subside and several days later plaintiff sought advice from an attorney who had represented him in the past for an accident. The attorney sent him to the Metropolitan Health Clinic, where he was seen by Dr. Norman Ott (Dr. Ott), an internal medicine specialist, who préscribed exercises, heat and medications. Plaintiff testified at first that he saw Dr. Ott six times during the next five months in which he was treated. On cross-examination, he stated that it was four times. Plaintiff said that he was told to do his exercises at home, as well as going to the clinic for physical therapy, three times per week. Plaintiff admitted that he did not return for his physical therapy treatments as many times as the doctor wanted because it was hard for him to get to the clinic. He explained that he got off work at 4:30 p.m. and it took one and one-half hours to get to the clinic by bus from his job. Plaintiff stated that he tried to catch the bus at 4:33 p.m., and, if he missed it, he had to catch the one that came at 4:50 p.m. He thought that the clinic closed at 5:30 p.m. weekdays and 11:00 a.m. on Saturday. Time sheet documents of the last six months from his employer showed that he worked late, from ten minutes to thirty minutes, ten to twelve times. In addition, sometimes he did not go for treatment because he felt better. Plaintiff stated that he could not go to physical therapy every Saturday because his family needed to use their only car, but he went once or twice. However, plaintiff testified that at home he performed the same exercises that he did at physical therapy, as instructed by the doctor. He said that his wife helped him with his exercises. Although he claimed that he used six sick days due to his injuries, the time sheets showed that he was only out one day.
1 ePIaintiff, a deliveryman and truck driver, testified that he was worried about being able to do his job because his shoulder hurt. His job requires lifting boxes weighing two to fifty pounds. Plaintiff was discharged from medical care six months after the accident. He said that he was not totally symptom free in his shoulder at discharge, but that it was a lot better.
Dr. Ott treated plaintiff beginning on January 30, 1995. Plaintiffs initial complaints were pain in his right shoulder area and upper arm. He reported that the pain resulted from the accident wherein he struck his shoulder. After examining plaintiff, the doctor diagnosed him with an impact injury to the right shoulder and cervical trapezius strain. Plaintiff was given a pain medication, but no anti-inflammatory medication because of prior problems with ulcers. Dr. Ott started plaintiff on an active exercise program with heat treatments. The exercises were designed to increase plaintiff’s range of motion and strengthen the muscles in the neck and shoulder. He wanted plaintiff to attend *1123 therapy three times per week and to also do his exercises at home. Dr. Ott testified that home exercises were important and could be done routinely. He felt that the physical therapy was also important because the therapist could make sure that he was doing the exercises correctly. He was told to use caution in using his neck and shoulder. Plaintiff was told to return to see the doctor in one month. However, he did not return until April. The doctor testified that plaintiff had not been to see him because of his work schedule. He said that it was not unusual for a patient to wait before coming back. At this time, his neck was much improved, but there was still pain in the right trapezius muscle. He told plaintiff to continue to do the exercises at home and use caution with movement. Further, he was started on elec-tro-stem therapy and continued with therapy twice per week. Plaintiff next saw the doctor in June of 1995. His neck problem ,had resolved and his shoulder was not symptomatic. The doctor discharged plaintiff at that time. Dr. Ott stated that plaintiff did not have muscle spasms during his examinations. He noted that plaintiff had eleven physical therapy treatments over .the five months that he was treated. Dr.. Ott also stated that plaintiff’s recovery might have been quicker had he attended physical therapy sessions more frequently, but he could not say for sure that it would have been l7shorter. The doctor noted that the clinic closed at 6:45 p.m. during the week and at noon on Saturday. Dr. Ott felt that the accident caused plaintiffs problems and that he had no reason to believe that plaintiff was not injured since his symptoms were consistent with his explanation of .how he was hurt.
The court of appeal may not set aside the trial court’s findings of fact in the absence of manifest error or unless the findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); O’Boyle v. Piglia, 95-990 (La.App. 5 Cir. 2/27/96); 670 So.2d 1339, 1342; Badeaux v. State, Dept. of Transp. and Development, 96-853 (La.App. 5 Cir.2/25/97); 690 So.2d 203, 208 (La.App. 5 Cir.1997). However, plaintiff has the burden of proving by a preponderance of the' evidence that the injury was caused by the accident. Tartar v. Hymes, 94-758 (La.App. 5th Cir. 5/30/95); 656 So.2d 756, 758, writ denied 95-1640 (La.10/6/95); 661 So.2d 475.
In this case, the trial judge believed that plaintiff sustained the injury as a result of the accident. Although there were some minor inconsistencies in plaintiffs testimony, they were not so serious as to raise a question as to the truth of plaintiffs injury. Furthermore, we find as credible both plaintiffs reasons for not going regularly to therapy and, even thought the impact was minor, the manner in which plaintiff claimed he was injured. Thus, we find that the trial judge was not clearly wrong in finding that plaintiff was injured when his arm slipped and fell from the window ledge due to the impact.
Accordingly, the judgment of the trial court is hereby affirmed. Appellant is assessed. costs of appeal.
AFFIRMED.