h MURRAY, Judge.
Martha and Jack Sands appeal a trial court judgment granting Prudential Property and Casualty Insurance Company’s motion for summary judgment and dismissing Mr. and Mrs. Sands’ uninsured motorist (“UM”) claim against Prudential. The issue on appeal is whether the trial court erred in granting Prudential’s motion for summary judgment, apparently finding that Mr. and Mrs. Sands failed to provide an independent and disinterested witness who could testify that their injuries were the result of the actions of a “phantom” driver.
FACTS AND PROCEDURAL HISTORY
Prudential is the liability and UM insurer of a World War II-era jeep purchased by John Kushner to donate to the D-Day museum in New Orleans. The jeep arrived in New Orleans from California in *747 late October 1996. On the early morning of November 3, 1996, Wali Armstead, with passengers Jack Sands and Randolph Har-rill, drove the jeep to Belle Chase, Louisiana to participate in a public relations event at an air show.
At the intersection of General de Gaulle Drive and Garden Oaks Drive in New Orleans, Armstead allegedly swerved to avoid hitting a vehicle that ran a red light on Garden Oaks. As Armstead attempted to stop, the brakes on the jeep | ..allegedly failed, and the jeep overturned. Sands sustained injuries in the accident, including a broken shoulder and a ruptured spleen.
Sands sued Prudential as liability and UM insurer of the jeep. His wife, Martha Sands, sought compensation for her loss of consortium, service and society. Mr. and Mrs. Sands also named Armstead as a defendant, claiming he contributed to their damages. Armstead was not served with this lawsuit.[1]
Prudential filed a motion for summary judgment arguing that under La.R.S. 22:1406, to recover under the UM provision of an insurance policy, the plaintiff must provide an independent and disinterested witness to testify that a phantom vehicle caused the accident. Prudential argued that because Mr. and Mrs. Sands could not provide such a witness, their UM claim should be dismissed. The trial judge granted Prudential’s motion for summary judgment, presumably finding that Mr. and Mrs. Sands could not provide an independent and disinterested witness to testify that a phantom vehicle caused the accident by forcing Armstead to swerve and the jeep to flip over. Mr. and Mrs. Sands appeal this judgment.
LAW AND ANALYSIS
In La.R.S. 22:1406(D)(l)(f), the Louisiana Legislature set forth the following provision governing the issuance of UM coverage in this state:
Uninsured motorist coverage shall include coverage for bodily injury arising out of a motor vehicle accident caused by an automobile which has no physical contact with the injured party or with a vehicle which the injured party is occupying at the time of the accident, provided that the injured party bears the burden of proving, by an independent and disinterested witness, that the injury was the result of the actions of the driver of another vehicle whose identity is unknown or who is uninsured or un-derinsured.
RThe object of Louisiana’s UM legislation is to promote full recovery for innocent automobile accident victims by making UM coverage available for their benefit. Caboni v. General Motors Corporation, et al., 2000 WL 1449883, p. 2 (E.D.La.9/27/00), citing Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 578 (La.1982). Therefore, the UM statute is to be liberally construed to carry out its objective of providing reparation for those injured through no fault of their own. Id.
The insurance policy in the instant case contains a provision similar to the language of La.R.S. 22:1406(D)(l)(f), stipulating that the policy only covers damage where there is actual physical contact between the covered motor vehicle and an uninsured motor vehicle unless the injured party can show, by an independent and disinterested witness, that the injury was the result of the actions of the driver of another vehicle whose identity is unknown or who is uninsured or underinsured.
*748 Therefore, in the instant case, where no party claims that actual contact occurred between the insured vehicle and a phantom vehicle, the statute and policy require that an independent and disinterested person testify that an unknown vehicle caused the accident in question. In Jackson v. State Farm Mutual Automobile Insurance Company, 27,611 (La.App. 2 Cir. 12/6/95), 665 So.2d 661, the court used ordinary definitions for the terms “independent” and “disinterested”:
Neither the statute nor the insurance policy defines “independent and disinterested witness,” therefore, we will give them their ordinary meanings. LSA-C.C. Art. 11. “Independent” means not influenced or controlled by others in matters of opinion, conduct, etc.; thinking or acting for oneself. “Disinterested” means unbiased by personal interest or advantage; not influenced by selfish motives. Websters, New Universal Unabridged Dictionary pp. 412, 723, 1992.
665 So.2d at 663. We agree that the ordinary definitions of these words is appropriate to use.
In their only assignment of error, Mr. and Mrs. Sands contend that Armstead, the driver of the jeep, is an independent and disinterested witness who can testify that a phantom vehicle caused the accident. They claim he has no stake in the outcome of the litigation, has nothing to gain or lose by his testimony about a phantom vehicle, and he was only a nominal party when he was deposed.
Mr. and Mrs. Sands further assert that Prudential failed to submit sufficient evidence in its motion for summary judgment to support its allegation that Armstead has a stake in the pending litigation. They claim that Prudential’s motion requires that Armstead’s credibility be determined, which is prohibited on a summary judgment motion. Mr. and Mrs. Sands maintain that the trial court’s decision is unfair, and they assert that, in a case like this, the trier of fact should weigh a witness’s credibility to determine his interest, bias, or independence.
Prudential argues that Armstead is not an independent or disinterested witness because he is a named defendant and because he worked for Sands at the time of the accident. Prudential further asserts that Armstead’s status as a named and served defendant in Harrill’s lawsuit influences his independence in the instant lawsuit.
Appellate courts review summary judgments de novo, using the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. La. Code Civ.P. art. 966. TheJ^initial burden of proof remains on the movant to show that no genuine issue of material fact exists. However, if, as in the instant case, the movant will not bear the burden of proof at trial, his burden on the motion does not require him to negate all essential elements of the plaintiffs claim, but rather is to point out that there is an absence of factual support for one or more elements essential to the claim. La.Code Civ.P. art. 966(C)(2); Fairbanks v. Tulane University, 98-1228 (La.App. 4 Cir. 3/31/99), 731 So.2d 983, 985.
After the movant has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La.Code Civ.P. art. 966(C)(2); Smith v. General Motors Corp., 31-258 (La.App. 2 *749 Cir. 12/9/98), 722 So.2d 348, 351. If the non-moving party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment. La.Code Civ.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 Cir. 9/10/97), 699 So.2d 895, 897. When a motion for summary judgment is properly supported, the non-moving party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.Code Civ.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
In support of its motion for summary judgment, Prudential submitted the petition which alleged in the alternative that a phantom vehicle caused or contributed to the accident; Mr and Mrs. Sands’ response to Prudential’s request for admission listing Sands, Armstead and Harrill as the only eyewitnesses to the Raccident; the deposition of the investigating police officer; the deposition of Sands; and Ilar-rill’s petition showing that Armstead had been served in his lawsuit.
In opposition to Prudential’s summary judgment motion, Mr. and Mrs. Sands submitted an affidavit from Armstead in which he swore that he saw a champagne-colored Honda automobile begin to cut across his path in the intersection in question where he had a green light and the Honda had a red light. Armstead also swore that he applied the jeep’s brakes and took evasive action to avoid a collision with the Honda, however, the jeep’s brakes failed, and the jeep swerved and overturned.
In his deposition, Armstead stated that at the time of the accident, he was on “drill status” with the marine corp, teaching preschool, and working part-time for Sands as a night custodian at a restaurant owned and operated by Sands and his son.
With regard to the accident in question, Armstead stated that he drove the jeep on the morning of the accident because he was in his military uniform and was representing the Marine Corps. Armstead testified that while driving to the air show, he saw a champagne-colored Honda shoot across the intersection of General de Gaulle and Garden Oaks. He stated that he applied the brakes once he saw the Honda was not going to stop, but the brakes on the jeep did not engage. ’ Armstead indicated that he was not aware that the jeep had brake trouble, and he stated that on the drive to Belle Chase, he had stopped several times before the accident without incident.
Armstead stated that he had a green light at the time of the accident, and he swerved to avoid contact with the other vehicle. He stated that although he told the | investigating police officer about the other vehicle, this information was not put in the police report.
Armstead stated that he has no current business relationship with Sands, and he stopped working for Sands sometime before moving to California. He also stated that Mr. Sands contacted him once since he has been in California, as did Prudential, and he has received no promises or suggestions from Mr. or Mrs. Sands. Armstead further stated that he had no relationship with Harrill and had only seen Harrill once at the restaurant before the accident.
In his deposition, the investigating police officer, Armando Asaro, stated that the brake inspector who inspected the jeep determined that the brakes had failed because there was no brake fluid in the master cylinder. Officer Asaro also stated *750 that he did not recall if anyone mentioned to him that the jeep was attempting to avoid another vehicle, but he believed he would have recorded such information had it been given to him. Officer Asaro stated that Armstead was cited in the accident for careless operation, no driver’s license, and no proof of insurance and that the citation for careless operation had to do with Arm-stead’s statement to him that he (Arm-stead) was aware of brake problems with the jeep.
Officer Asaro stated that he believes Armstead attempted to stop the jeep, but when the brakes failed, the jeep swerved, and the design of the jeep caused it to flip over. Officer Asaro stated that he believes a major factor in the accident was the malfunction of the brakes.
In his deposition, Sands stated that he thought the light was green when the jeep approached the intersection where the accident occurred. He stated that he remembers a white vehicle coming from the right to left across the intersection. | RSands stated that Armstead’s statement to him and the police report were totally different and that Armstead never indicated anything about brake problems to him.
Because this is a summary judgment motion, we must only decide if Armstead is independent and disinterested in compliance with the language of the statute and policy. Whether his testimony is sufficient to prove that there was more probably than not a phantom vehicle which caused the accident in question is left for the trier of fact.
Mr. and Mrs. Sands acknowledge that the statute does require a witness other than Sands to corroborate the existence of a phantom vehicle in order to overcome a summary judgment motion. See Jackson, 665 So.2d 661, 664. Mr. and Mrs. Sands also acknowledge that some persons may not give such corroborating testimony. In Stracener v. Millers Casualty Ins. Co. of Texas, 96-138 (La.App. 3 Cir. 11/6/96), 682 So.2d 940, the court rejected the plaintiffs minor child as an independent and disinterested witness because the child also filed a liability claim arising out of the accident, sought UM benefits, and lived with, had a close relationship with, and was in part financially dependent upon her mother.
Furthermore, a witness who is independent and disinterested must be able to provide testimony that a phantom vehicle in some way caused the accident at issue. See Schollnick v. Doe, 00-68 (La.App. 5 Cir. 5/30/00), — So.2d —, 2000 WL 758466.
In O’Boyle v. Piglia, 95-990 (La.App. 5 Cir. 2/27/96), 670 So.2d 1339, at issue was the trial testimony of a police officer who was a named and served defendant and who settled with the plaintiff immediately before trial. The UM carrier argued that the officer was not an independent and disinterested witness 19because, at trial, he had not yet been dismissed from the lawsuit. The court disagreed, and held:
... [The officer] testified at trial that he was no longer a defendant. The compromise and settlement stipulation was entered into the record prior to trial. Thus, although he was not dismissed by court order, he no longer had an interest in the outcome of the litigation. Furthermore, [the officer] testified that although he could have been suspended as a result of his fault for the accident, he was not penalized in any manner. It was not likely that he would be penalized because of his testimony four years after the suit. [The officer] had nothing to lose or gain by his testimony that a phantom driver pulled into the intersection in front of him, causing him to swerve around the driver and collide with plaintiff. Thus, we find that *751 the trial judge did not err in relying on the testimony of [the officer] to find that plaintiff proved by an independent and disinterested witness that the phantom driver was fifty percent at fault in the injury.
670 So.2d at 1342.
In Cox v. Masun, 98-1857 (La.App. 4 Cir. 2/10/99), 729 So.2d 671, writ denied, 99-0682 (La.4/30/99), 741 So.2d 15, the plaintiff was denied recovery against her own UM carrier because the potential “independent and disinterested” witness, the driver of the vehicle in which the plaintiff was a passenger, was found not to be disinterested at the time of his deposition although he was dismissed by the plaintiff before trial. When the deposition testimony was used in place of live testimony at trial, the court held:
... where deposition testimony is used in lieu of live testimony, the independent status of the witness under LSA-R.S. 22:1406(D)(l)(f) is to be determined at the time he gives his deposition, not the time at which his deposition may be used at trial....
We find no merit in plaintiffs contrary argument that the language of LSA-C.C.P. art. 1450 implies that we should evaluate the disinterestedness of a witness at the time the deposition is offered at trial in lieu of live testimony, rather than |1flat the time that the witness-defendant was deposed. O’Boyle v. Piglia, 95-990 (La.App. 5 Cir. 2/27/96); 670 So.2d 1339, is inapposite. In O’Boyle the plaintiff settled with the witness-defendant prior to the 'time that witness testified. The O’Boyle court found that under those circumstances the witness was disinterested when he testified at trial even though he had not yet been dismissed formally from the case. In view of the settlement, at the time the witness in O’Boyle testified he was a defendant only in a technical sense in name only, but in reality and in substance he was disinterested, i.e., he had no further interest in the outcome of the case.
729 So.2d at 673-74. The court’s statement in Cox that the witness’s biased deposition testimony was not “magically transformed” into testimony from a disinterested witness simply because his deposition testimony was introduced at trial minutes after the plaintiff dismissed claims against the witness, is not relevant in the instant case. On the summary judgment motion in this case, Armstead’s interest and independence are being evaluated ,as of the time of his deposition, which may or may not be used at trial.
These cases illustrate the need for courts to evaluate a potential witness’s interest and independence on a case -by-case basis and in concrete terms, which may include revelation of policy limits or other information. In this case, where the potential witness is a named defendant in the lawsuit at issue, the court must question the actual extent of the witness’s exposure and whether the witness will stand to gain from the existence of a phantom vehicle. On a summary judgment motion, the moving party must provide more than conclu-sory statements on these various issues to meet its burden of proof.
In the instant case, Prudential’s claims that Armstead is not disinterested, has a motive to shift blame in the accident, and is biased are merely conelusory statements unsupported by a factual basis. Likewise, Armstead’s former status as | nan employee of Sands and his status as a named and served defendant in the Harrill lawsuit are both offered by Prudential as reasons why Armstead is not independent or disinterested, without explanation. Neither reason is significant enough to automatically preclude UM coverage.
*752 Armstead appears disinterested because Prudential has not. shown him to have an interest or stake in the outcome of the lawsuit. He appears independent because he is unrelated to Mr. or Mrs. Sands by blood or affinity, and his former employment for Sands is insignificant. Thus, we find that Armstead is not precluded under La.R.S. 22:1406(D)(l)(f), as a matter of law, from being an “independent and disinterested” witness. It will be up to the trier of fact to determine whether Mr. and Mrs. Sands establish at trial, through Armstead, that the negligence of a phantom driver in part caused their injuries. The trier of fact will appropriately be evaluating Armstead’s credibility.
Essentially, Prudential did not successfully point out an absence of factual support for any one element of the UM claim in this case. Even had Prudential made the required showing, Mr. and Mrs. Sands produced factual support by way of affidavit and depositions sufficient to establish that they could satisfy their evidentiary burden at trial. We therefore find that genuine issues of material fact exist with regard to a phantom vehicle and that Prudential is not entitled to judgment as a matter of law.
CONCLUSION
We decline to establish a rule that the driver of a vehicle in which the plaintiff is a passenger can never be an independent or disinterested witness. Here, where Prudential has failed to put forth evidence tending to show that Armstead has anything to gain by his testimony, we cannot condone the harsh result created |1gby the trial court’s ruling. Thus, we find that the trial judge erred in concluding that Mr. and Mrs. Sands failed to offer an independent and disinterested witness who could testify that a phantom driver was at fault in the accident. For the reasons assigned, we reverse the trial court’s judgment granting Prudential’s summary judgment motion.
REVERSED.

. Harrill also filed a lawsuit against Prudential and named Armstead as a defendant; Armstead was served with that lawsuit.