725 So.2d 61 (1998)
Pamela LAPEYROUSE
v.
WAL-MART STORES, INC., et al.
No. 98-CA-547
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1998.
*62 Isidro Rene Derojas Campbell, McCranie, Sistrunk, Anzelmo & Hardy, Metairie, Attorney for Appellant Wal-mart Stores, Inc.
Ford T. Hardy, Jr., Howard, Laudumiey, Mann, Reed & Hardy, New Orleans, Attorney For Appellee Pamela Lapeyrouse.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
*63 CANNELLA, Judge.
Defendant, Wal-Mart Stores, Inc. (Wal-Mart), appeals from a judgment in a personal injury suit filed by plaintiff, Pamela Lapeyrouse, for injuries she received from falling merchandise. Plaintiff also appeals the percentage of fault and amount of damages awarded. We affirm.
On April 30, 1995, plaintiff was shopping in a Wal-Mart store located in Gretna, Louisiana. Plaintiff attempted to grab a can of Gatorade from a shelf located higher than her head and several cans of the product fell from the shelf, striking her in the face. At the time, plaintiff had stitches in her face from dermatological surgery. She reported the incident to the store manager.
On March 29, 1996, plaintiff filed suit for injuries to her nose, lip, temple and neck. A judge trial was held on November 13, 1997, after which, the trial judge found Wal-Mart 75% at fault for the accident and plaintiff 25% at fault. The trial judge awarded plaintiff $45,000 for general damages and $2,794 for medical expenses, all subject to reduction in accordance with the percentages of fault.
On appeal, Wal-Mart contends that the trial judge manifestly erred in finding it at fault. Wal-Mart contends that plaintiff bears a burden of proof under La.R.S. 9:2800.6(A) that Wal-Mart failed to exercise reasonable care to keep its aisles, passageways and floors in a reasonably safe condition. Because Wal-Mart contends that it produced evidence of a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage, it exculpated itself from negligence. Wal-Mart argues that plaintiff's testimony was not credible in that she failed to reveal in her deposition and to her physicians numerous other accidents which could have been the cause of her injuries. Further, Wal-Mart asserts that plaintiff's trial testimony was inconsistent with the history she gave to her treating physicians.
Plaintiff appealed the finding of 25% comparative fault and the amount of damages.

LIABILITY
La.R.S. 9:2800.6[1] provides:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
Sec. 2800.6 B, as amended in 1990, delineates the merchant's liability for falls on the premises. That provision is inapplicable here. We agree with the court in Edwards v. K & B, Inc., 26,002 (La.App. 2nd Cir. 8/17/94), 641 So.2d 1040, 1044, in which the court concluded that Sec. 2800.6 B, as amended in 1990, did not change the law applicable to falling merchandise claims and that these claims continue to be governed by the principles stated in Sec. 2800.6 A and in Bell v. Bestyet Discount Foods, 372 So.2d 781, 784 (La.App. 2nd Cir.1979). Under R.S. 9:2800.6(A), the merchant must use reasonable care to keep its aisles, passageways and floors in a reasonably safe condition, free of hazards which may cause injury. Further, a plaintiff who is injured by falling merchandise must prove, even by circumstantial evidence, that a premise hazard existed. Edwards v. K & B, Inc., 641 So.2d at 1044. Once the plaintiff proves a prima facie premise hazard, the defendant has the burden to exculpate itself from fault by showing that it used reasonable care to avoid such hazards by means such as periodic cleanup and inspection procedures. Id.
In this case, plaintiff, a fifty year old surgical technician, testified that the cans of Gatorade were stacked three high on a shelf even with the top of her head. She stood on tiptoes on one foot to reach the can she selected. The cans were made of a type of cardboard with aluminum on each end. Plaintiff stated that the cans were projecting over the lip or edge of the shelf. When she reached for and secured a can, several fell. She *64 jerked backwards, but the cans struck her face anyway. She had just had some small cancers removed from her face and still had stitches in the areas where they were removed. She immediately reported the incident. Plaintiff denied going back to the area with Carl Gaines (Gaines) or anyone else. She later returned to the store to make an official statement.
Gaines, a former employee of defendant and manager trainee at the time of the accident, testified that he accompanied plaintiff to the aisle after being notified of the accident. He stated that there were no cans on the floor and none extended over the edge of the shelf. Gaines said that the particular shelf was above plaintiff's head and that plaintiff said that the accident was her fault. Gaines admitted that plaintiff had a small lesion or gash above her nose. When shown photographs of shelves containing Coca-Cola bottles as evidence of merchandise hanging over the edge of the shelves at Wal-Mart, taken after the accident, he concluded that none of the bottles projected over the shelf lip.
Gaines testified to Wal-Mart's safety procedures, that its employees received computer modular training and must pass a test before being assigned to the floor. Gaines stated that all employees were then assigned a "mentor" to assist them when they were assigned a department for further orientation. These instructions included how to stock items from the heaviest upward to the lightest. However, for items like Gatorade, no particular procedure was used. Instead, Gaines said that those items were stacked according to "common sense". He noted that the store has over 100 aisles. Gaines also testified that the store used safety zoning procedures or "zone defenses". Over the loudspeaker once per hour, everyone in the store was instructed to perform a safety check of aisles and shelves. In addition, every 30 minutes, department managers could, as an option, hold safety checks. The store managers, employees and maintenance workers routinely performed safety sweeps, as well.
Cheryl Gant (Gant), Wal-Mart's Support Manager, testified that her job is to help customers, handle complaints, verify checks and monitor the store floors and aisles. She is superior to the floor clerks, but below the store assistant manager. Gant testified that the staff is given general instructions on staging merchandise on the counters correctly and explained the zone defense procedures.
Gant testified about Wal-Mart's Safety Manual for employees, which was introduced into evidence. She noted that there are no specific instructions for stacking merchandise, but that shelf stocking is done according to common sense. She stated further that it was Wal-Mart's policy to store all items safely on the shelves so that they would not protrude over the edge and fall on customers. After being shown the photographs of the shelves stocking the Coca-Cola bottles, which she found representative of the accident scene, she agreed that some of the bottles on high shelves protruded over the lip. Since Gatorade is seasonal, there was no Gatorade at the store at the time the photographs were taken. She stated that the top shelf is called a "riser" and is used to store overstocked items. Nonetheless, Gant did not think that these bottles would fall and cause an accident.
The incident report, containing both Gant's and Gaines' names, does not mention plaintiff admitting any fault. Plaintiff denied making any such statement to Gaines.
The court of appeal may not set aside the trial court's findings of fact, in the absence of manifest error or unless the findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); O'Boyle v. Piglia, 95-990 (La.App. 5th Cir. 2/27/96); 670 So.2d 1339, 1342; Badeaux v. State, Dept. of Transp. and Development, 96-853 (La.App. 5th Cir. 2/25/97); 690 So.2d 203, 208. Furthermore, "where two permissible views of the evidence exists, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart v. State, 617 So.2d 880, 882-883 (La.1993). However, a proper review of the record cannot be completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court. There must be a further determination that the factfinder's *65 conclusion is reasonable in light of the entire record. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216, 220. The manifest error standard of review applies as well to the trial court's apportionment of percentages. Walker v. McCartney, 96-706 (La.App. 5th Cir. 9/17/97), 700 So.2d 898, 903.
The trial judge was faced with credibility determinations and his conclusions are not clearly wrong. The trial judge believed plaintiff's testimony about the accident. He found Gaines' testimony suspect when Gains denied that the photographs showed the Coca-Cola bottles protruding over the shelf lip, when it was clear that some of them did so. There are no procedures in place that would prevent overstocked merchandise from being stacked in such a way that the merchandise protrudes over the lip. The manner of stacking items three on top of each other and overlapping the shelf can obviously cause the objects to fall when one item is selected. Based on the evidence, we find that the trial judge did not err in finding at the time of the incident, that a premise hazard existed at Wal-Mart.

COMPARATIVE NEGLIGENCE
In regard to comparative negligence, this finding is also subject to a review under the manifest error standard. In this case, we find that the trial judge did not err in finding Wal-Mart 75% at fault and we also find plaintiff 25% at fault. He found some fault on plaintiff because she saw the items stacked in a somewhat precarious position and should have used more care for her own safety.

DAMAGES
Plaintiff testified that she went to her general physician for immediate inspection of the sutures, which had opened as a result of the accident, and for treatment of contusions and lacerations to her lip, nose and the area between her eyebrows. She stated that she was provided with an ice pack and bandage. The next day, her neck starting hurting. She reported the neck pain for the first time on May 5, 1996 when she went to see Dr. Luis Bogran. Wal-Mart's accident report describes her injuries as facial contusions and lacerations with bleeding.
Plaintiff testified that she had suffered migraine headaches and neck pain from a 1985 accident. Plaintiff also was a victim in a rear-end accident in 1993, after which she complained of neck pain. In another accident in 1994, something flew into plaintiff's windshield. Finally, in June 1996, after the incident at Wal-Mart, plaintiff walked into a post while assisting her father into a car. As a result, she sought treatment in an emergency room for nausea, dizziness, headaches and neck pain. Plaintiff failed to mention these events at her deposition taken in July of 1997. Plaintiff did not report the 1985 accident to the doctor who saw her the day after this accident. She stated that was because she was focused on the problem with her stitches.
Plaintiff was treated by Dr. Bogran for nine months from May 4, 1995 through February 9, 1996. Dr. Bogran diagnosed plaintiff with chronic cervical spine strain one year after the accident and recommended a Magnetic Resonance Imaging test (MRI). The results of the test showed herniated cervical discs at C4-5 and C5-6. She also had cervical spondylosis, compromise of the left nerual foramens at C3-4 and C4-5 and a bulging disc at C3-4.
In 1997, plaintiff began treatment with Dr. John Olson, a neurologist, for her neck complaints and headaches. She related a store accident (stating that fruit cans fell on her). Plaintiff admitted being involved in a motor vehicle accident in 1985 and that she had neck pain on and off since then. She noted that she had been involved in other accidents, which she claimed did not require treatment. Dr. Olson reviewed her 1986 MRI, noting that she had a C4-5 and C5-6 herniated disc and C6 nerve root alteration. He thought that the C6 nerve damage was new. The doctor believed that plaintiff was a "pretty honest" lady and that if she neglected to inform him about a previous accident, it was because she felt it did not amount to anything. Dr. Olson testified that plaintiff is a nurse and would probably not accept surgery (costing approximately $45,000) until something dreadful occurred, although she is a *66 good candidate for surgery. The doctor estimated that plaintiff has a 15% total body disability and that the accident herein constituted a "significant aggravation" of the prior cervical disc injury.
The standard for the review of damage awards is whether, after an articulated analysis of the facts, this court finds that the trial judge abused his great discretion. Bostwick v. M.A.P.P. Industries, Inc., 97-791 (La.App. 5th Cir. 12/30/97), 707 So.2d 441, 448; Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). This determination is made with consideration to the individual circumstances of the injured plaintiff. Bostwick v. M.A.P.P. Industries, Inc., 707 So.2d at 448; Theriot v. Allstate Ins. Co., 625 So.2d at 1340. After an analysis of the facts and circumstances peculiar to the particular case and plaintiff, an appellate court may conclude that the award is inadequate. Bostwick v. M.A.P.P. Industries, Inc., 707 So.2d at 448; Theriot v. Allstate Ins. Co., 625 So.2d at 1340. Only then is a resort to prior awards appropriate, and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Bostwick v. M.A.P.P. Industries, Inc., 707 So.2d at 448; Theriot v. Allstate Ins. Co., 625 So.2d at 1340.
The medical evidence here shows that plaintiff has two herniated cervical discs, which will eventually need surgery at a cost of $45,000. However, she had a pre-existing cervical condition involving the discs. The trial judge concluded that plaintiff was a credible witness and awarded her general damages in the amount of $45,000, taking into consideration her pre-existing condition. After our review, we find that the trial judge did not abuse his discretion in awarding plaintiff damages for the injury or in the amount of the award.
Accordingly, the judgment of the trial court is hereby affirmed.
Costs of this appeal are to be paid by Wal-Mart.
AFFIRMED.
NOTES
[1] La.R.S. 9:2800.6 was enacted in 1988 and amended in 1990 and 1996. The amendments specify that the provisions are to be given prospective application. See: Acts 1990, No. 1025, Sec.2. The 1990 amendment is applicable here.