LGOTHARD, Judge.
Plaintiff, Mary Davis, filed suit against defendants, Wal-Mart Stores, Inc., d/b/a Sam’s Club, Lionel Johnson and ABC Insurance Company, (hereinafter Sam’s Club) alleging that she was injured while shopping at the Sam’s Club Store in Ken-ner, Louisiana. The matter was tried before a jury, who found that defendant was not negligent or at fault under strict liability and thus was not liable to the plaintiff. Thereafter, plaintiff filed for a Judgment Notwithstanding the Verdict (JNOV) and alternative New Trial; the trial court granted the JNOV in favor of plaintiff, Mary Davis, and after finding Sam’s Club liable to her, it awarded general damages of $125,000.00 and past medical expenses *359 of $23,396.38. Defendant filed a Motion for Appeal. Ms. Davis answered the appeal and alleged that the award for | ¡¡general damages was inadequate, and that the trial court erred in failing to award past and future lost wages and future medical expenses. For the following reasons, we amend the judgment to include an award for future medical expenses, and as amended, we affirm the decision of the trial court.
At trial, the following facts were adduced. On November 19, 1994, Ms. Davis and her friend, Carol Couroleau went to Sam’s Club in Kenner, Louisiana. While in the store, they went down an aisle that had Christmas displays. Several small boxes fell from a shelf and landed in front of them. Plaintiff bent down to pick up the boxes, and while she was in a crouched position, she was hit in the head by a wooden Santa Claus. Ms. Davis described the Santa as being modern in design, 12 to 15 inches high with a base of 2 to 3 inches and coming to a point at the top. The Santa Claus had been sitting on a shelf which was over her head when she was crouched. The shelving was temporary, consisting of a unit with one shelf over five foot from the ground. Boxes of merchandise were placed under the shelf.
Neither plaintiff or Ms. Couroleau touched the shelf before the Santa fell, and there were no other customers in the immediate area of the shelf. Ms. Davis testified that after the accident someone tried to stand the Santa back on the shelf, it wouldn’t stay upright and they had to lay it on its side. Ms. Davis testified that she thought it was Ms. Couroleau who put the Santa back; Ms. Couroleau state.d that she didn’t remember if it was her or someone else who replaced the Santa.
As soon as the Santa struck Ms. Davis’ head, her right eye began to water, as if she were crying. Ms. Davis and Ms. Couroleau walked around the store for 5-10 minutes and Ms. Couroleau noted that Ms. Davis was |4upset and in pain. She complained that her head hurt, and she was grasping her grocery basket. She had a knot on her head the size of a nickel.
Ms. Davis reported the incident to the store supervisor, Mr. Lionel Johnson. Ms. Davis testified that she reported the accident because she had seen a child in a stroller and she was fearful that the Santa Claus would fall on him.
Mr. Johnson observed that Ms. Davis’ eyes were watery, she had a knot on her head, and she was flustered. As a result, he filled out an accident report. Mr. Johnson went to the site of the accident and noted that the shelf on which the Santa had been sitting was buckled and had a curvature to it. At the trial, Mr. Johnson admitted that he would not inspect the shelving on a regular basis, but would wait until something happened. Mr. Johnson also testified that there was no merchandise on the top shelf on the opposite side of the aisle. Mr. Johnson also admitted that, while it was store policy to take a Polaroid snapshot of store items involved in an accident, he did not take a picture of the Santa or the shelf in this case. He did not know what happened to the shelf or the Santa Claus after this accident.
William Martin was the store employee assigned to the seasonal department. He testified that he was called by the manager, Mr. Johnson, to “zone” or clean up the area where the accident had happened. After the accident, he went with Mr. Johnson to inspect the area. He examined the shelving, but did not notice a pucker. Martin testified that no logs or records were kept in the store to document the inspections of the aisles, and that he did not know when he had last “zoned” the aisle prior to the 1 ¡¡accident. He also testified that there were no pictures taken of the shelf or the Santa Claus.
In this appeal, Sam’s Club alleges that the trial court was in error in granting the plaintiffs Motion for JNOV and alternative New Trial.
A JNOV is authorized under La. C.C.P. art. 1811. In Kistner v. King, 98-641 (La. *360 App. 5th Cir. 12/16/98), 726 So.2d 68, 70, we said:
This court stated the stringency of the law on judgments notwithstanding the verdict in State of Louisiana, Dept. of Transp. and Dev. v. Scramuzza, 95-786 (La.App. 5 Cir. 4/3/96), 673 So.2d 1249:
“A JNOV is properly granted ‘only when the facts and inferences are so strongly and overwhelmingly in favor of one party’ that the trial judge believes reasonable men could not have arrived at a contrary verdict.” Adams v. Security Ins. Co. of Hartford, 543 So.2d 480, 486 (La.1989). Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991).
[[Image here]]
In considering a motion for JNOV, the trial court may not weigh the evidence, substitute its judgment of facts for that of the jury, or pass on the credibility of witnesses. (Cites omitted.) Furthermore, the court should consider all of the evidence, not just the evidence that supports the non-mover’s case, and should give the non-mover the benefit of every legitimate and reasonable inference that can be drawn from the evidence by the jury. State, Department of Transp. and Dev. v. Wahlder, 554 So.2d 233 (La.App. 3rd Cir.1989); McClain v. Holmes, 460 So.2d 681 (La.App. 1st Cir. 1984).
This court, in reviewing a JNOV, must use the aforementioned criteria in deciding whether or not the motion was properly granted. Anderson v. New Orleans Public Service, supra. If the reviewing court determines that the trial court erred in granting the motion, because reasonable men in the exercise of impartial judgment might reach a different conclusion than the one proposed by the moving party, then the JNOV must be reversed and the jury |fiverdict should be reinstated. Anderson v. New Orleans Public Service, supra.
Plaintiff asserted claims of both negligence and strict liability against Sam’s Club. La. C.C. art. 2315 provides in part that “Every act whatever of man that causes damage to another obliges him by whose fault it happens to repair it.” La. C.C. Art. 2317 provides that “We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody ...”
La. R.S. 9:2800.6 A,[1] at the time of the plaintiffs accident, provided:
A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
This court recently stated that La. R.S. 9:2800.6 A governs the applicable standards to be applied to a merchant in a case of falling merchandise:
Sec. 2800.6 B, as amended in 1990, delineates the merchant’s liability for falls on the premises. That provision is inapplicable here. We agree with the court in Edwards v. K & B, Inc., 26,002 (La.App. 2nd Cir.8/17/94), 641 So.2d 1040, 1044, in which the court concluded that Sec. 2800.6 B, as amended in 1990, did not change the law applicable to falling merchandise claims and that these claims continue to be governed by the principles stated in Sec. 2800.6 A and in Bell v. Bestyet Discount Foods, 372 So.2d 781, 784 (La.App. 2nd Cir.1979). Under R.S. 9:2800.6(A), the merchant must use reasonable care [7to keep its aisles, pas *361 sageways and floors in a reasonably safe condition, free of hazards which may cause injury. Further, a plaintiff who is injured by falling merchandise must prove, even by circumstantial evidence, that a premise hazard existed. Edwards v. K & B, Inc., 641 So.2d at 1044. Once the plaintiff proves a prima facie premise hazard, the defendant has the burden to exculpate itself from fault by showing that it used reasonable care to avoid such hazards by means such as periodic cleanup and inspection procedures. Id.
Lapeyrouse v. Wal-Mart Stores, Inc., 98-547 (La.App. 5 Cir. 12/16/98), 725 So.2d 61, 63, writ denied, 99-0140 (La.3/12/99), 739 So.2d 209.
In this case, the uncontroverted testimony of Ms. Davis and Ms. Couroleau established that Ms. Davis stooped down to pick up boxes in the aisle, and then was injured when a Santa Claus fell from an adjacent shelf and landed on her head. Ms. Davis and Ms. Couroleau also established that the wooden Santa would not stand upright on the shelf from which it had fallen. The testimony of store manager Lionel Johnson established that the shelf on which the Santa was sitting had a “buckle” in it. The testimony of employee Jimmy Martin established that the shelf was not a double shelf so that shoppers in another aisle would not be reaching for the merchandise on that shelf. Sam’s Club’s customary manner of displaying seasonal items was to put a display item on the shelf, and to place boxes containing the items under that shelf, and that shoppers would go through the boxes, which would cause them to fall and/or protrude into the aisles. Both employees testified that, during the Christmas season, the stores were crowded and it was difficult for the employees to “zone” or inspect the area on a regular basis. Despite the Christmas season, no additional employees were assigned to patrol the aisles. Furthermore, the employees of Sam’s Club failed to | stake photographs of the Santa statue or the shelf, and failed to preserve the statue or the shelf as evidence. Where a litigant fails to produce evidence available to him and he does not provide a reasonable explanation, the presumption is that evidence would have been unfavorable. Small v. Baloise Ins. Co. of America, 96-2484 (La.App. 4 Cir.3/18/98), 753 So.2d 234. We do not find defendant’s explanation that there was nothing to preserve to be a reasonable explanation for the failure to take photographs at the time of the accident.
The trial court, in granting the JNOV, stated that:
Clearly the hazardous condition which was proven in this case was the presence of a temporary shelf with a defect in it described as a curvature or “pucker” which precluded an object with a flat base from remaining in a stable position when situated thereon.
From either a negligence or strict liability standard, it was impossible for the jury to have concluded that there was no fault on the part of Sam’s.
The Court finds that a preponderance of the evidence was in favor of a finding that the pucker on the shelf constituted a premise hazard thereby shifting the burden of proof to the defendant to exculpate itself form fault. Clearly Sam’s, in its failure to offer any evidence to contradict that offered by the plaintiff failed in this regard. A defect in the shelving was found by the admission of defendants’ own store supervisor, Lionel Johnson, which said defects coupled with the falling of the boxes from the shelf underneath, caused plaintiffs’ (sic) injuries. In addition, Sam’s failed to explain why they neither photographed the shelf nor the statue itself in order to escape the adverse presumption that the production of those items would have been detrimental to its cause.
|9We agree with the trial court in its conclusion that reasonable men of impartial judgment, under the facts of this case, could not have reached a conclusion other *362 than the defendant’s store contained a hazardous condition which caused the Santa Claus to fall on Ms. Davis’ head.
Defendants also appear to argue that the trial court erred in finding that Ms. Davis suffered injury as a result of being struck by the Santa statue. The record reflected that Ms. Davis suffered a head injury as a result of the falling Santa Claus. Immediately after the accident, she developed a tearing of the right eye and severe headaches. Thereafter, she developed post-concussion syndrome, and also had problems with her memory, with concentration, with fluorescent lighting, neck pain and right side numbness. She was treated by various doctors.
Dr. Kenneth Vogel, an expert in neurosurgery, saw Ms. Davis at the request of Dr. Kucharchuk, an orthopaedist. Dr. Vo-gel testified that he thought she might have a herniated disc, but he couldn’t tell without further testing. Dr. Howard Katz was qualified as an expert in physical medicine and rehabilitation. He performed an independent medical examination on May Davis on June 8, 1996, and then treated her for four visits from July 9, 1996 to October 9, 1996. He testified that Ms. Davis suffered from radioculopathy (pinched nerve) caused by a misalignment in the disc between C7 and Tl as a result of being hit by the statue. Her photopho-bia (difficulty with lights), mild cognitive defects and migraine headaches were caused directly by the blow to the head and to a lesser extent from having pinched nerves in the neck. He felt that Ms. Davis had reached maximum medical improvement and that she would be stable for the future. Plaintiff testified |inthat she had not undergone the testing because the procedures were expensive and she had no health insurance. She also stated that she was not ready for surgery, and would not have surgery unless absolutely necessary. Ms. Davis was also treated by Dr. T. Luke Yang, a specialist in pain management, which treatment was ongoing as of the date of trial.
At the time of trial, Ms. Davis was also suffering from anxiety and depression. It was established that Ms. Davis had personal and emotional problems even before the accident at Sam’s Club. Dr. Vincent Carbone, a psychologist, testified .that following the accident, he treated Ms. Davis for those problems. He stated that although she’d had problems with anxiety and some depression prior to the accident, it was the accident that “tripped her over the edge” and made it harder for her to deal with her problems. Dr. Andrews, a neuropsychologist, also treated Ms. Davis for emotional difficulties. She opined that plaintiff dealt with an adverse set of circumstances fairly well before the accident, but she couldn’t cope after the accident, and that caused anxiety and depression. Given this testimony, we find no error in the trial court’s determination that Ms. Davis suffered compensable injuries and in awarding damages accordingly.
Plaintiff has answered the appeal and she alleges that the trial court erred in failing to award additional damages for past and future lost wages and for future medical expenses.
Once a trial court has concluded that a JNOV is warranted because reasonable men could not differ on the fact that the award was either abusively high or abusively low, it must then determine what is the proper amount of damages to be awarded. In making this determination, the judge |nis not constrained as the courts of appeal are to raising (or lowering) the award to the lowest (or highest) point which is reasonably within the discretion afforded that court. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991).
Ms. Davis alleges that the trial court’s award of general damages is inadequate. In our review of an award of general damages, under Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), the initial test, prior to reviewing any other damage awards for purposes of a scale *363 of reference, is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much”, even “vast”, discretion of the trier of fact. We have carefully reviewed this particular case and we cannot say that the trial court’s award of $125,000.00 is an abuse of discretion.
With regard to her claim for past and future lost wages, we note that plaintiff did not brief same and therefore that claim may be abandoned. Uniform Rules-Courts of Appeal, Rule 2-12.4. Furthermore, we have reviewed the record and we find that Ms. Davis failed to establish past and future lost wages with sufficient degree to warrant an award for same.
Concerning plaintiffs claims for future medical benefits, this court has previously noted that:
In order to recover future medical benefits, the plaintiff must prove that these expenses will be necessary and inevitable. Future medical expenses must be established with some degree of certainty and must be supported with medical testimony and estimation of probable cost. However, when the need for future medical care has been demonstrated but cost is not susceptible of determination, the court may make a reasonable award.
| ^Hopstetter v. Nichols, 98-185 (La.App. 5 Cir. 7/28/98), 716 so.2d 458, 462, writ denied, 98-2288 (La.11/13/98)[,] 731 So.2d 263.
In this case, we have reviewed the evidence presented and find that the trial court was in error in failing to award future medical expenses. At the time of trial, Ms. Davis was in her late 40s. Dr. Howard Katz testified that she would need conservative future medical treatment. He estimated that she would need injections twice a year at $107.00 for each, or $214.00 per year and prescription medication of $200.00 per month, or $2,400.00 per year. Dr. Katz also opined that there was a possibility of future surgery; however, he was not specific on that issue.
Dr. Andrews testified as to the need for future psychotherapy, which she estimated would cost $14,500.00.
Under the circumstances of this case, we believe that an award of $40,000.00 is warranted for future medical expenses.
For the above discussed reasons, the decision of the trial court is amended to award to plaintiff $125,000.00 in general damages, past medical expenses of $23,-396.38, and future medical expenses of $40,00.00, and as amended we affirm the decision of the trial court. All costs are assessed against appellant.
AMENDED, AND AS AMENDED, AFFIRMED.
GANNELLA, J„ DISSENTS.

. La. R.S. 9:2800.6 was enacted in 1988 and amended in 1990 and 1996. The amendments specify that the provisions are to be given prospective application. Acts 1990, No. 1025 § 2. This accident occurred in November of 1994 and therefore the 1990 amendment is applicable here.