833 So.2d 464 (2002)
Edith S. LEMAIRE, Wife of/and Marcel Lemaire
v.
AIRLINE LIONS CLUB HOME, INC. and its Insurer, Essex Insurance Company.
No. 02-CA-699.
Court of Appeal of Louisiana, Fifth Circuit.
November 26, 2002.
*465 Byron Ann Cook, William A. Neilson, Ajubita, Leftwich & Salzer, New Orleans, LA, for Edith S. Lemaire and Marcel Lemaire, Plaintiff/Appellee.
Kurt P. Forshag, Martiny & Caracci, Metairie, LA, for Edith S. Lemaire and Marcel Lemaire, Plaintiff/Appellee.
Al M. Thompson, Jr., New Orleans, LA, for Airline Lions Club Home and Essex Insurance Company, Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On October 31, 1997, Edith and Marcel Lemaire attended a dance at the Airline Lions Club Home ("Lions Club") in Metairie, Louisiana, as they often did on Friday nights. During the dance, Mrs. Lemaire, who was 81 years old at the time, sat at a table in the front of the Lions Club and she danced many of the dances. At the end of the dance, which was approximately 11:00 p.m., the lights were turned on and Mrs. Lemaire began to say goodbye to her friends. After she wished those at her table farewell, she proceeded to a table in the back of the Lions Club that was perpendicular to the back wall with eight chairs on each side. Mrs. Lemaire went around the table and kissed each person good night. After she kissed the last person at the table, she stepped back and fell on a rug that was just behind the table in front of the back door to the Lions Club. As a result of the fall, Mrs. Lemaire broke her wrist and she had to undergo surgery and use an external fixation device to repair the injury.
On October 28, 1998, Mr. and Mrs. Lemaire filed suit against Airline Lions Club, Inc. and its insurer, Essex Insurance Company. The defendants answered and requested a trial by jury. Prior to the trial, the plaintiffs filed a Motion to Strike Trial by Jury, stipulating that the value of their claims did not exceed $50,000. The trial court granted the Motion to Strike Trial by Jury, and a bench trial was held on March 18, 2002. On March 22, 2002, the trial judge signed a judgment in which she found Airline Lions Club Home, Inc. to be 100% at fault for the accident and awarded general damages to Mrs. Lemaire in the amount of $60,000 but reduced the award to $50,000 due to the previous stipulation. *466 The trial court also awarded $10,000 to Mr. Lemaire for loss of consortium. It is from this judgment that Airline Lions Club Home, Inc. and Essex Insurance Company appeal.

DISCUSSION
The first two assignments of error asserted by the appellants are interrelated and will be addressed simultaneously. In the first assignment of error, the appellants assert that the trial court erred in finding the defendant 100% liable for Mrs. Lemaire's accident, because the trial court's finding that a chair caused the rug to fold or buckle is unsupported by the record. In the second assignment of error, the appellants argue that the trial court erred in failing to assess comparative fault to Mrs. Lemaire, because she was stepping backward without looking and had traversed the area in question without difficulty only seconds earlier. The plaintiffs argue that the defendants created a hazard when they placed a table too close to a rug/door mat where chairs backed up against it as people got up and down to dance. They argue that when the chairs backed up, the rug would buckle and that this is the most probable explanation for Mrs. Lemaire's fall.
An appellate court is not permitted to set aside the trial court's factual findings, unless the findings are clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Badeaux v. State, Department of Transportation and Development, 96-853 (La.App. 5 Cir. 2/25/97), 690 So.2d 203, 208, writ denied, 97-779 (La.5/1/97), 693 So.2d 733. When factual findings are based on the credibility of witnesses, the manifest error standard demands great deference to the trier of fact's findings. Schexnayder v. Exxon Pipeline Company, 01-1236 (La. App. 5 Cir. 3/13/02), 815 So.2d 156, 160. The manifest error standard also applies to the trial court's apportionment of percentages of fault. Lapeyrouse v. Wal-Mart Stores, Inc., 98-547 (La.App. 5 Cir. 12/16/98), 725 So.2d 61, 65, writ denied, 99-140 (La.3/12/99), 739 So.2d 209.
The parties agree that there was a rug/ door mat in front of the back door near the table where Mrs. Lemaire was telling her friends goodbye and subsequently fell. However, the parties disagree as to the distance of the table and chairs from the door and the rug. Several witnesses testified regarding the distance of the table and chairs from the back door and rug. For instance, Mr. Peter Catalano testified that he attended the dance and witnessed Mrs. Lemaire's fall, and he stated that the back table was about two feet from the door. However, later in his testimony, he indicated that the table could have been approximately five feet from the door. Mrs. Lemaire testified that "I kind of remember the back of the chairs being partly on the rug." The testimony regarding the distance of the chairs from the rug was varied and inconsistent, and it was the job of the trial judge to assess each witness' credibility and to make factual findings accordingly. After listening to the differing testimony and assessing the witnesses' credibility, the trial judge concluded in her reasons for judgment that "it seems fairly clear and more probable than not that the table was within a couple of feet of the door....."
Mr. Harold Meyer testified that he attended the dance and that he was seated at the back table on the side of the table that was next to the rug. He indicated that his chair was at the end of the table that was opposite to the back door and away from the rug. He testified that the rug was directly behind the chairs at the end of the table nearest to the door. He stated that prior to Mrs. Lemaire's fall, he was aware of the presence of the rug, and *467 he opined that, "[t]he reason I had no difficulty with the rug that was there is because I was closer to this end of the table, so when I turned I turned to my right and walked right on out to go to the dance floor." Mr. Meyer stated that he observed Mrs. Lemaire lying partially on the rug after she fell, and he noticed that the rug had a wrinkle in it. Although the defendants argue that the wrinkle was probably caused by the fall, the plaintiffs contend that the wrinkle was more probably caused by a chair coming in contact with the rug and that the wrinkle must have caused Mrs. Lemaire to fall. The defendants also contend that the rug was placed at the back door for use by anyone who entered the Lions Club through that door. However, the plaintiffs argue that all of the guests entered from the front door where the money was collected.
The defendants also argue that Mrs. Lemaire suffered from positional vertigo and that she likely lost her balance on her own accord while the rug was lying flat on the floor. However, Mrs. Lemaire testified that she danced every dance and felt great that night. Further, Mrs. Florence Catalano testified that she saw Mrs. Lemaire that evening and she did not appear to be dizzy or to have any difficulty walking or dancing.
After hearing the testimony and evidence in this matter, the trial judge stated in part:
More probably than not the table was too close to the rug, and interfered with the function of the rug and turned something that was there for safety purposes into a hazard, because when one stepped away from the table, one was placed in a position where one would fall on the rug.
Therefore, I find more probably than not that the rug as situated next to the table posed a hazard and unreasonable risk of harm, and that that harm caused Mrs. Lemaire's injury sustained in the fall.
There was a question of comparative negligence, whether Mrs. Lemaire was comparatively negligent when she stepped back onto the rug. I found that she was not, because as explained at trial, her act of stepping was a typical act that one would make as one steps away from a table to turn and walk away, so I find that she was not comparatively negligent.
The trier of fact is accorded great deference on the question of factual causation. Schexnayder v. Exxon Pipeline Co., supra at 160. In this case, the testimony and argument presented by each side supported a different cause of the accident. When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly wrong or manifestly erroneous. Stobart v. State, 617 So.2d 880, 882-883 (La.1993). An appellate court must determine whether the factfinder's conclusion is reasonable in light of the entire record. Lapeyrouse v. Wal-Mart Stores, Inc., et al., supra 64-65. Considering the testimony and evidence in this matter, we cannot say that the trial judge was manifestly erroneous when she found that the defendants were 100% at fault for the accident and that Mrs. Lemaire was not comparatively negligent. Accordingly, the appellants' first two assignments of error are without merit.
In the third assignment of error, the appellants argue that the trial court erred in awarding $10,000 to Mr. Lemaire for loss of consortium. They assert that there was no evidence that Mrs. Lemaire's injuries had an adverse effect on her relationship with Mr. Lemaire.
*468 A claim for loss of consortium encompasses the following elements: loss of love and affection, loss of society and companionship, impairment of sexual relations, loss of performance of material service, loss of financial support, loss of aid and assistance, and loss of fidelity. Kistner v. King, 98-641 (La.App. 5 Cir. 12/16/98), 726 So.2d 68, 70; Seagers v. Pailet, 95-52 (La.App. 5 Cir. 5/10/95), 656 So.2d 700, 713. However, a plaintiff is not required to prove every element in order to prevail. Id.
At trial, Mrs. Lemaire testified that she "couldn't do anything" for about eight months after the accident. She could not dress, bathe, eat, cook or use the bathroom without the assistance of her husband. She further testified that she did not sleep in the same bed with her husband after the accident, because her arm was hurting and she had to stretch out to get comfortable. Mr. Lemaire testified that "she couldn't do nothing for almost a year" and that he had to do everything, including the grocery shopping and washing the clothes. He also stated that he did not sleep in the same bed with Mrs. Lemaire after the accident.
The record before us establishes that Mr. Lemaire did indeed suffer the loss of several of the elements required for a loss of consortium claim. Accordingly, we find that he has met his burden of proving a loss of consortium claim. We further find that an award of $10,000 for Mr. Lemaire's loss of consortium is not excessive, and we affirm this judgment of the trial court.
In the fourth and final assignment of error, the appellants argue that the trial court erred in granting the plaintiffs' Motion to Strike Trial by Jury. They assert that the plaintiffs' stipulation that their damages did not exceed $50,000 was intended solely to deprive the defendants of their right to a trial by jury.
Procedural maneuvers designed solely for the purpose of depriving a litigant of his right to a jury trial based on jurisdictional amount are disfavored. Black v. Prudential Property and Casualty Insurance Co., 93-878 (La.App. 3 Cir. 3/2/94), 634 So.2d 1340, 1344. However, the plaintiff can establish that a Motion to Strike Trial by Jury is not intended to be solely a procedural maneuver if the plaintiff can show in good faith that the amount in dispute is less than $50,000.
In the instant case, at the hearing on the plaintiffs' Motion to Strike Trial by Jury, the trial judge stated that "a broken wrist with an external fixation device in Jefferson Parish is probably worth less than $50,000." Thereafter, the trial judge granted the plaintiffs' Motion to Strike Trial by Jury. However, after considering the testimony and evidence at trial, the trial judge found that Mrs. Lemaire's general damages were $60,000, but she reduced them to $50,000 due to the plaintiffs' stipulation. Although the defendants argue that the plaintiffs intended to deprive them of their right to a jury trial, we find that it was reasonable for the trial judge to believe prior to trial that the good faith amount in dispute was less than $50,000. Accordingly, we find that the trial judge did not err when she granted the plaintiffs' Motion to Strike Trial by Jury, and this assignment of error is without merit.
For the reasons set forth above, we affirm the trial court's March 22, 2002 judgment and the trial court's ruling granting the plaintiffs' Motion to Strike Trial by Jury.
AFFIRMED.