Filed 1/26/24  Li v. Cole Haan LLC CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LIN LI, | H050205 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 18CV328984) |
| v. | |
| COLE HAAN LLC, | |
| Defendant and Respondent. | |

Lin Li sued Cole Haan LLC, alleging that Cole Haan negligently created a dangerous condition at one of its stores causing a shoebox to fall and injure her.  The trial court granted Cole Haan's motion for summary judgment.  Because Cole Haan met its initial burden of establishing the stacked shoeboxes in its store did not constitute a breach of its duty of care and Li failed to raise a triable issue to the contrary, we will affirm the judgment.[1]

---

[1] In light of our conclusion that the judgment in favor of Cole Haan should be affirmed, Li's appeal as to the summary adjudication of punitive damages is moot.  (See *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 444.)

# I. BACKGROUND

## A. *The Complaint*

In the operative second amended complaint, Li alleged that in 2017, as she shopped at a Cole Haan store, "an unsecured [shoebox] dislodged by another customer fell from the top of a high stacking shelf" and caused her "physical injuries, mental anguish, pain and suffering, [and] loss of wages." Pleading causes of action for premises liability and general negligence, Li alleged that Cole Haan breached its duty to keep its store "in a reasonably safe condition and to use reasonable care to discover any unsafe conditions and to repair, replace, or give customers adequate warning of anything that could be reasonably expected to harm others." She alleged that Cole Haan's breach consisted of "failing to secure the [shoeboxes], . . . failing to reasonably inspect the premises and discover the danger, and . . . failing to give customers adequate warning." Li also sought punitive damages.

## B. *Motion for Summary Judgment*

In support of its motion for summary judgment, Cole Haan presented the following evidence.[2]

At the time of the incident, Li was trying on shoes in the clearance section of a Cole Haan store. This was a hallway lined with "on-sale rack[s]"; men's shoes were in a "display" of racks on one side of the hallway, women's shoes on the other. Each shelf of a display exhibited a row of shoeboxes and featured a "ledge" to prevent the boxes from falling. The top of each display was a flat surface, at a height estimated by the store manager to be 6.5 to 7 feet high, bearing stacks of shoeboxes. On top of the men's display, shoeboxes were arranged in stacks four boxes high; on top of the women's display, smaller shoeboxes were stacked five boxes high.

---

[2] Quoted language in this section is taken from deposition testimony in the record and the parties' separate statements.

Customers typically inspect the shoes displayed on the shelves and ask a sales associate to supply the appropriate size. A sign in the clearance section read, "If you need assistance, please call one of our associates." It was the sales associates' job "to provide [customers] with the size they need" from stock "on the floor" or "in the stockroom." As Cole Haan's store manager put it: "We are sales associates for a reason; we assist the customer."

Li "was squat[ting] down on the floor" of the hallway, her back to the men's clearance display two to three feet behind her, when a male customer "trying to reach over to . . . shoes [stacked] above the [men's] rack" caused a box of shoes to fall on her. In "reach[ing] up high . . . to remove a box there," the six-foot man dislodged another immediately above it, causing it to fall and strike Li.

The store manager at the time of the incident had never before seen a customer try to reach for a box stacked on the subject shelf. Aside from the incident involving Li, there had been no other known incidents at any Cole Haan store in California involving a customer being struck by a falling shoebox. Cole Haan was aware of only one other time at any of its California stores in the past 10 years where any person was struck by a falling shoebox, and this incident involved an employee carrying shoeboxes and accidentally dropping one on a fellow employee.

Although "[m]ost of the shoeboxes were the same size . . . , if sizes varied, larger boxes [on top of the display] were [] stacked at the bottom, with smaller boxes stacked above." Store employees regularly checked the boxes to ensure they were in place: Sales associates "constantly" walked up and down the store and in the process checked the boxes, including in the clearance area. "If they needed to be fixed, you rearrange and you fix," because it was "part of [their] job." Employees were trained in the use of ladders to retrieve items for customers from above the displays and avoid injury to themselves or customers.

In opposition to Cole Haan's motion, Li submitted photographs of the displays and deposition testimony about the displays. Each of the displays featured nine display



shelves, each shelf with a single row of open boxes; the top eight display shelves were angled to exhibit the shoes in the open boxes, held on the shelf by a rim along the front of the shelf, whereas the ninth display shelf at the bottom was flat. Like the bottom display shelf, the top surface of each display was flat, with closed boxes stacked four high on top of the men's display. The closed boxes on top of the women's display were stacked five high. The top of the display rack on which the closed boxes were stored was a few inches above the height of an adjacent exit doorway.

Li disputed the height of the top surface of the display, "to the extent that [Cole Haan's] estimate . . . may not be accurate." In lieu of an alternative measurement, she presented evidence that the store manager (about five feet three inches tall) could reach the top surface of the display with her outstretched fingernail, that a sales associate (six feet one inch) could touch the stacked boxes with his arm extended and that the same sales associate had previously seen customers "try to" reach the stacked boxes.

4

Li disputed the adequacy of signs in the clearance area, based on evidence that there was "no sign on the top shelf," that Li's spouse did not see a sign warning " 'Don't reach for the shelf,' " and that the other customer did not see a sign on the shelf.

Li further disputed that Cole Haan employees "constantly" checked the shelves, providing the deposition testimony of the customer who had caused the shoebox to fall that he had been in the clearance area for approximately five to ten minutes before the accident, during which time he did not recall seeing any store associates in that area. Li further disputed that the boxes above the display racks were stacked in descending size, noting that the store manager testified at her deposition that it "would sometimes be difficult to keep [the stacked shoeboxes] in size order" within time constraints.

The trial court granted Cole Haan's motion, concluding that "no dangerous condition existed at the time of the subject incident that caused [Li] to be injured."

The trial court entered judgment in favor of Cole Haan in May 2022. Li timely appealed.

## II.    DISCUSSION

It is undisputed that Cole Haan owed Li a duty to exercise reasonable care in keeping its premises reasonably safe. (See *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 (*Ortega*).) To prevail on her complaint, however, Li bore the burden of establishing a breach of that duty—"the existence of a dangerous condition, and that the defendant knew or should have known of it." (*Vaughn v. Montgomery Ward & Co.* (1950) 95 Cal.App.2d 553, 556.) "The existence of a dangerous condition ordinarily is a question of fact, but the issue may be resolved as a matter of law if reasonable minds can come to only one conclusion." (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1133.) At issue on appeal is whether the evidence before the trial court foreclosed as a matter of law any finding that Cole Haan breached its duty of reasonable care, or whether there exists a triable issue of material fact as to the existence of a dangerous condition on

5

the store premises and, if so, whether Cole Haan had actual or constructive knowledge of that condition. We conclude that summary judgment was proper.

**A.     *Standard of Review***

Where a defendant has prevailed on summary judgment, " ' "we review the record de novo to determine whether [it has] conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." [Citation.]' [Citation.]" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) The moving defendant "bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.) Upon a defendant's prima facie showing of the nonexistence of a triable issue of material fact, the plaintiff "is then subjected to a burden of production of [her] own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid*.) " ' "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' [Citation.]" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

**B.     *Cole Haan's Prima Facie Showing***

It is incumbent on a plaintiff to "prove not only that [a condition] was dangerous but that the defendant knew or should have known that it was." (*Laird v. T. W. Mather, Inc.* (1958) 51 Cal.2d 210, 220 (*Laird*).) In our independent judgment, Cole Haan's evidence, viewed in the light most favorable to Li, sufficed to meet its initial burden of showing that Li would be unable to prove a dangerous condition of which Cole Haan had actual or constructive notice.

"It is well established in California that although a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." (*Ortega*, *supra*, 26 Cal.4th at p. 1205.) As Li appropriately concedes, a "dangerous condition" is one that involves an "unreasonable"

6

risk of injury, not a trivial one. (See CACI No. 1003.) A risk of harm is unreasonable "if the gravity and likelihood of the danger outweigh the utility of the conduct involved." (*Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 47 (*Weirum*).) The likelihood or foreseeability of harm in evaluating negligence and causation (as opposed to the existence of a duty) requires a " 'focused, fact-specific' inquiry that takes into account a particular plaintiff's injuries and the particular defendant's conduct." (*Laabs v. Southern California Edison Co.* (2009) 175 Cal.App.4th 1260, 1273; see also *Ballard v. Uribe* (1986) 41 Cal.3d 564, 572–573, fn. 6.)

Cole Haan carried its initial burden with evidence demonstrating that the stacks of shoeboxes at issue were stored above the display racks; the stored shoeboxes were stacked in orderly fashion, and the stacks of men's shoes were no more than four boxes high; it was the employees' responsibility to retrieve boxes from the stacks; they were trained to do so by ladder; employees regularly inspected the stacks; customers were encouraged to request employee assistance; the store manager had never previously known a customer to independently reach for boxes stored above the display racks; and there had been no other incidents in California in which a shoebox fell from a shelf and injured a person. This evidence is sufficient for Cole Haan to meet its initial burden of showing either that no dangerous condition existed at the store or that Cole Haan was unaware of any dangerous condition.

Li cites *Bridgman v. Safeway Stores, Inc.* (1960) 53 Cal.2d 443 (*Bridgman*) to argue that Cole Haan was subject to a "heightened standard of care, as a matter of law." But Li misreads *Bridgman*, in which the California Supreme Court affirmed a defense verdict (finding various instructional errors harmless) where one or more pumpkins falling from a stack in the defendant's self-service market struck the plaintiff and injured her. (*Id*. at p. 446.) The high court did not categorically impose a heightened standard of care or announce a new rule of law but merely observed: "Where . . . the owner operates his store on a self-service plan, under which customers are invited to inspect, remove, and

7

replace goods on the shelves, the exercise of ordinary care *may* require the owner to take greater precautions and make more frequent inspections than would otherwise be needed to safeguard against the possibility that such a customer may create a dangerous condition by disarranging the merchandise. [Citations.]" (*Id*. at p. 448, italics added.) It immediately reaffirmed, "[h]owever, the basic principle to be followed in all these situations is that the owner must use the care required of a reasonably prudent man acting under the same circumstances." (*Ibid.*)

Li focuses on the "greater precautions" and "more frequent inspections" that the court in *Bridgman* suggested that "ordinary care *may* require" with respect to "self-service" displays. (See *Bridgman*, *supra*, 53 Cal.2d at p. 448, italics added.) Li's effort to analogize *Bridgman*'s produce market display—pumpkins stacked in two layers on a 29-inch-high stand—does not support an inference that the stacks of shoeboxes here were foreseeably "self-service." The record evidence here establishes that, while the display racks of open boxes invited customers to "inspect, remove, and replace goods on the shelves" (see *ibid*.), the stacks above the display were not intended for customers' access. In *Bridgman*, "the merchandise was 'handled quite a bit' " (*id*. at p. 446), whereas the evidence here was that the stacks of boxes stored above the displays were only rarely handled by customers, whether due to the above-doorway height of even the lowest box in a stack or the signage inviting customers to request assistance from staff.[3] The record evidence here (leaving aside common experience) indicates that the limited extent to which Cole Haan invited self-service was to invite customers to inspect exemplars of available shoe models but, if the displayed exemplar were not the appropriate size, to request employee assistance to obtain an otherwise identical shoe in a different size.

---

[3] Although Li disputes the adequacy of the signage as a warning of a dangerous condition, we understand the signage not as a warning but merely as an indication that customers were entitled to employee assistance for retrieval of desired sizes in the clearance section, as they would be elsewhere in the store.

Shoes are not pumpkins, in terms of the customer/retailer experience, and neither the record nor *Bridgman* affords a trier of fact any basis for requiring Cole Haan to treat them as though they are.[4]

Cole Haan's evidence is sufficient to compel a factual finding that its method of storing boxes on top of display shelves did not create a dangerous condition—that is, a condition that involves an "unreasonable" risk of injury (*Laird*, *supra*, 51 Cal.2d at p. 216). Although a plaintiff can show that a "condition as it existed was in fact a dangerous one" by presenting evidence of previous "substantially similar" incidents (*id.* at p. 220), Cole Haan's evidence as to its historical experience anticipated and negated that possibility. That an accident occurred in this one particular instance does not, by itself, lead to the conclusion that it was precipitated by a dangerous condition. (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 432 (*Howard*).) The boxes were stacked in an orderly fashion, above the displays at a height that did not invite

---

[4] Li's reliance on out-of-state decisions involving falling merchandise is unavailing, as these decisions only underscore that whether or not a condition is dangerous depends on particular case-specific evidence. (Compare *Dougherty v. Great Atlantic & Pacific Tea Co.* (1972) 221 Pa.Super. 221 [289 A.2d 747, 748] [concluding that a reasonable jury could find "the stacking of food [jars] to be selected by customers on high shelving, not readily reachable or viewable" subjects customers to "unwarranted risk"] and *Lapeyrouse v. Wal-Mart Stores, Inc.* (La.Ct.App. 1998) 725 So.2d 61, 65 [stacking beverage bottles "three on top of each other and overlapping [a] shelf" was sufficient to support trial court's determination of a "premise hazard"] with *Garvin v. Bi-Lo, Inc.* (2001) 343 S.C. 625 [541 S.E.2d 831, 833] [concluding there was "simply no evidence" from which a jury could find defendant's stacking of open boxes of canned goods created a dangerous condition "[a]bsent evidence of some defective manner of stacking the boxes, or that [the defendant] was on notice that the stacked cans had become rickety"]; see also *Hofmann v. Toys "R" Us - NY Ltd. Pshp.* (N.Y.App.Div. 2000) 272 A.D.2d 296 [707 N.Y.S.2d 641] [affirming summary judgment for defendant where plaintiff was injured by box of diapers falling from top shelf]; *Ingram v. Costco Wholesale Corp.* (N.Y.App.Div. 2014) 117 A.D.3d 685 [985 N.Y.S.2d 272] [upholding summary judgment for defendant where plaintiff was injured by a case of iced tea falling from an open case on a high shelf].)

customer rummaging; the stacks were regularly observed (even open and obvious); and the number of boxes per stack was limited. These circumstances limited both the likelihood of boxes falling and the magnitude of the potential harm.

In her opposition to the motion for summary judgment, Li asserted that "[i]t is obvious the shoeboxes on the top require more safety measures than those on the lower shelves because of falling hazards" and that "a lack of restraining devices on a flat surface of the high top, such as a ledge or rise, combined with the manner of stacking four to five shoeboxes on each other, somewhat disorganized and projecting over the edge of the top, obviously create a dangerous condition." Li's argument, however, fails to address Cole Haan's evidence of the different usage of the flat storage area above the display, as opposed to the self-service racks of the display shelves below: customers were expected to freely use the display shelves, whereas the storage above was intended to be accessed by employees on ladders. To the extent Li relies on the rim or "restraining device" along the front edge of display shelves as proof that Cole Haan was aware that boxes on the flat top of the displays posed a hazard, she failed to account for her own photographic evidence, which makes apparent that the rim was installed only on the lower edge of angled display shelves. Moreover, even if Cole Haan's evidence could be said to support Li's assertion of obvious danger, "[f]oreseeability of harm is typically absent when a dangerous condition is open and obvious." (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 447.) "[O]wners and possessors of land are entitled to assume others will 'perceive the obvious' and take action to avoid the dangerous condition." (*Ibid*.) Because the shelves were in the clearance area, the shoeboxes were visible to customers and employees alike.

Even if we could discern potential for a reasonable trier of fact to find a substantial, unreasonable risk of harm in Cole Haan's stacking of shoeboxes, a jury could not conclude on Cole Haan's showing that Cole Haan should have appreciated the danger. "The fact that an accident occurred does not give rise to a presumption that it

10

was caused by negligence. [Citation.] Instead, the injured plaintiff must establish sufficient facts or circumstances that support an inference of a breach of duty, to defeat a summary judgment motion by a defendant that is asserting due care was exercised. It is not enough for the plaintiff to provide speculation or conjecture that a dangerous condition of property might have been present at the time of the accident." (*Howard*, *supra*, 203 Cal.App.4th at p. 432.) Cole Haan's undisputed evidence demonstrates that Cole Haan had no knowledge of any prior incident similar to this one. Cole Haan therefore would have had no reason to suspect its method of stacking shoeboxes atop displays was dangerous.[5] Cole Haan having met its initial burden, we examine whether Li's contrary showing was sufficient to raise a triable issue of material fact.

## C.    *Li's Burden of Production*

Although Li purported to dispute material facts, what she disputed was less the evidentiary facts adduced by Cole Haan than the inferences to be drawn from that evidence.

Li points to the absence of any restraining ledge along the top surface from which the shoebox fell, in contrast to the angled shelves of the display racks. But there is no evidence that the shoebox fell due to the lack of a restraint; the particular shoebox here fell because another customer dislodged it while attempting to extract another box from the middle of a stack. Li provides no evidence that a restraint might have prevented the accident so the lack of restraint is irrelevant here.

Li also presents no evidence that the shoeboxes were likely to fall under typical circumstances. She contends the photos show that the shoeboxes on the top projected

---

[5] We acknowledge that "the *fortuitous* absence of prior injury does not justify relieving defendant from responsibility for the *foreseeable* consequences of its acts." (*Weirum*, *supra*, 15 Cal.3d at p. 47, italics added.) *Weirum*, however, involved defendant's promotion of repeated impromptu high-speed automobile chases on public streets, conduct involving a foreseeably high risk of substantial harm. (*Id*. at pp. 47–48.) Cole Haan's stacked shoeboxes do not compare.

over the edge of the shelf and were disorganized because different sized boxes were stacked upon each other. The photos themselves do not support this contention; at most, they suggest that the shoeboxes were marginally misaligned but not in disarray. Moreover, Li's nonevidentiary assertions about what the photos showed at some other time do not raise a triable issue of material fact regarding the likelihood that a shoebox could foreseeably fall and injure someone.

To the extent Li disputes that the shoeboxes were always stacked in descending order of size, based on the manager's concession that this "would sometimes be difficult" when the store was busy, we do not view this as material. Li's own photographic evidence indicates that any differences in box size among the stacks above a given display were at most minor.

Further, Li focuses on the method of stacking shoeboxes and whether that made it likely one could fall on a customer, but she does not address whether there was an unreasonable risk of injury from such an occurrence. Stated differently, Li does not provide evidence regarding the foreseeable gravity of the harm from a falling shoebox.

Even if we were to assume for purposes of appeal a triable issue as to whether the stacked shoeboxes constituted a dangerous condition, Li's evidence does not raise a triable issue as to whether Cole Haan knew or should have known of the danger. Li notes in some instances "[w]here . . . 'the evidence is such that a reasonable inference can be drawn that the condition was created by employees of the [defendant], then [the defendant] is charged with notice of the dangerous condition. ' " (*Getchell v. Rogers Jewelry* (2012) 203 Cal.App.4th 381, 385 (*Getchell*).) As a general matter, however, this rule has been applied in claims against a property owner based on respondeat superior— where a transient and anomalous dangerous condition was "necessarily linked to an employee" (*ibid*.) of the property owner who in turn failed to correct it. (See *id*. at p. 384 [plaintiff slipped in a pool of cleaning solution]; see also *Oldham v. Atchison, T. & S.F.*

12

*Ry. Co.* (1948) 85 Cal.App.2d 214, 218–219 [plaintiff slipped on plaster board that had not been cleaned up].)

Here, in contrast, Li's theory is that the accident occurred due to a permanent, inherently dangerous condition created as a result of Cole Haan's regular practice of storing shoeboxes on an unsecured high shelf, not due to any temporary condition of the shoeboxes an employee created. She specifically asserts that "the dangerous physical condition was continuous, as [Cole Haan] never changed [its] way of stacking shoeboxes on the top of the shelves." In other words, Li here complains of Cole Haan's customary method of stacking shoeboxes, and the lack of a restraining device on the top shelf, not a condition that is "necessarily linked to an employee['s]" negligence.[6] (*Getchell*, *supra*, 203 Cal.App.4th at p. 385.)

Given the nature of Li's claims, *Getchell* does not allow us to impute notice to Cole Haan that its customary practice of stacking shoeboxes posed an unreasonable risk of injury. Rather, as we have explained, Li's claims would require her to "prove not only that [a condition] was dangerous but that the defendant knew or should have known that it was." (*Laird*, *supra*, 51 Cal.2d at p. 220.) On motion for summary judgment, Cole Haan's evidence as to the infrequency of customers retrieving boxes from the stacks above the displays, together with the absence of any past history of boxes falling from the stacks, satisfied its initial burden. In opposition, Li presented only "speculation or conjecture that [Cole Haan] should have recognized earlier that [the stacking of the shoeboxes] presented a dangerous condition of its property, if [it] did." (*Howard*, *supra*,

---

[6] Nor is it Li's contention that a customer left the stacks in such disarray that a box was likely to fall of its own accord. Thus, although Li does dispute Cole Haan's characterization of its employees as "constantly" checking the boxes in the clearance section, pointing to the absence of employees in that section for 10 minutes, the parties' disagreement over what frequency of inspection "constantly" may require is not material.

203 Cal.App.4th. at p. 434.)  Li's arguments and evidence raise no triable issue of material fact as to Cole Haan's notice of the purported danger.

### III.    DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Cole Haan.

_____

LIE, J.

WE CONCUR:

_____

GROVER, ACTING P.J.

_____

ADAMS, J.*

H050205
*Li v. Cole Haan LLC*

---

*Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.